UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
THE UNION LABOR LIFE INSURANCE CO.,

                Plaintiff,

        - against -

OLSTEN CORPORATION HEALTH AND
WELFARE BENEFIT PLAN, et al.,

                Defendants.
-------------------------------------------------------------X

**R E P O R T  A N D
RECOMMENDATION**

01 CV 6259 (DLI)

On September 21, 2001, plaintiff The Union Labor Life Insurance Company ("Union

Labor") commenced this action against defendants Olsten Corporation Health and Welfare

Benefit Plan (the "Olsten Plan"), Adecco, Inc. ("Adecco"), as successor in interest to the Olsten

Corporation ("Olsten"), and Connecticut General Life Insurance Company ("Connecticut

General"), seeking a declaratory judgment and asserting claims for equitable subrogation and

unjust enrichment. In both the original Complaint and the Amended Complaint ("Am. Compl."),

which was filed on December 28, 2001, plaintiff alleges that the Olsten Plan was primarily liable

for the payment of all medical expenses incurred by Brittany Rodrigues, including claims that

were processed and paid by Union Labor.

In February 2002, the parties filed cross-motions for summary judgment. By

Memorandum and Order dated March 14, 2005 ("Mem."), the Honorable Dora L. Irizarry

adopted this Court's Report and Recommendation of January 3, 2004 ("Report") insofar as it

recommended denial of defendants' motion for summary judgment based on lack of standing.

The court also dismissed plaintiff's state law claims as preempted and granted plaintiff's motion

for a declaratory judgment, declaring the Olsten Plan the primary plan under the coordination of

benefits provisions.

By Notice of Motion dated July 5, 2006, plaintiff now moves for summary judgment seeking an order enforcing the coordination of benefits provisions in the respective plans and requiring defendants to reimburse Union Labor for the amounts that should have been paid by Olsten as the primary plan. Defendants oppose the motion, and cross-move for entry of a final judgment, contending that the Court lacks jurisdiction to order compensatory damages.

By Order dated October 23, 2006, plaintiff's motion for summary judgment and defendants' cross-motion were referred to the undersigned to prepare a Report and Recommendation.

## FACTUAL BACKGROUND

As set forth in greater detail in this Court's earlier Report, in January 1997, Maribel Rodrigues, an employee of Olsten, applied for and received single medical benefits coverage under the Olsten Plan, including coverage for her daughter, Brittany Rodrigues, born December 26, 1997. (Rept. at 2).[1] Brittany Rodrigues was also covered by her father's plan, offered by the Trustees of the Milk Industry - Local 680 Welfare Fund (the "Milk Fund Plan"), and issued by Union Labor. (Id. at 2; Pl.'s 56.1 Stmnt ¶ 1).[2]

Both plans contain Coordination of Benefits ("COB") provisions that provide for priority of coverage based on the parent whose birthday occurs first in the calendar year. (Rept. at 2-3;

---

[1] Citations to "Rept." refer to this Court's earlier Report and Recommendation of January 3, 2005.

[2] Citations to "Pl.'s 56.1 Stmnt" refer to Union Labor Life Insurance Company's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment, dated July 5, 2006.

Pl.'s 56.1 Stmnt ¶ 5). The district court has declared that under this "birthday rule," the Olsten Plan was the primary insurer. (Mem. at 3).

As a result of Brittany Rodrigues' health problems, the family incurred medical expenses of over $300,000.00 from December 1997 through November 30, 1998. (Rept. at 3). Claims for reimbursement of these expenses were submitted by the Rodrigues family and the health care providers to the claims administrator for the Olsten Plan,[3] W.J. Jones Administrative Services, Inc. ("W.J. Jones").[4] (Rept. at 3; Pl.'s 56.1 Stmnt ¶ 8; Defs.' Mem. at 4-5). It is undisputed that W.J. Jones denied primary coverage, and that the Milk Fund Plan paid over $300,000.00 in claims for Brittany Rodrigues. (Rept. at 3; Pl.'s 56.1 Stmnt ¶ 2). At the time the payments were made, the Milk Fund claims that it was unaware that Brittany had insurance under the Olsten Plan.[5] (Rept. at 3; Pl.'s 56.1 Stmnt ¶ 12). Upon learning of the Olsten Plan coverage, the Milk Fund Plan sought reimbursement in accordance with the COB provisions in the plans. (Rept. at 3-4; Pl.'s 56.1 Stmnt ¶ 13).

The Olsten Plan has consistently refused to reimburse Union Labor Life, raising a number of arguments in its initial motion, including the failure of the Milk Fund to comply with certain

---

[3]Defendants dispute that it was the Rodrigues family who properly submitted claims for reimbursement, asserting in their Memorandum of Law in Opposition to Plaintiff's Motion for Reimbursement of Money Paid and in Support of Cross Motion for Entry of Final Judgment, dated August 3, 2006 ("Defs.' Mem."), that it was the health care providers who submitted claims directly to the Olsten Plan for "the vast majority, if not all, of the claims." (Defs.' Mem. at 4-5).

[4]The original claims administrator, W.J. Jones, was replaced by USI Administrators, Inc. ("USI"). (Rept. at 3).

[5]Defendants reject plaintiff's assertion that it was unaware of Brittany's potential coverage by the Olsten Plan, pointing to an insurance claim form received by the Milk Fund Plan in or about May 1998 that disclosed such coverage. (Defs.' Mem. at 4).

prerequisites for reimbursement. (Rept. at 4-5). One such provision in the Summary Plan Description requires that all claims for reimbursement must be filed within 90 days after the expense is incurred and in any event within 12 months after the expense is incurred. (Id. at 5). The court concluded that this provision did not preclude plaintiff's claim and that W.J. Jones' decision denying the claim on the basis of its 12-month reporting requirement was arbitrary and capricious. (Mem. at 3-4).

Plaintiff now moves for summary judgment, contending that, as the primary insurer, defendant Olsten was obligated to pay Brittany Rodrigues' medical expenses and therefore should be Ordered to pay restitution to the Milk Plan in the amount of the funds paid. Defendants cross-move for the entry of a final judgment in their favor.

DISCUSSION

A. <u>Summary Judgment Standards</u>

It is well-settled that a party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990) (quoting Fed. R. Civ. P. 56(c)). Since summary judgment is an extreme remedy, cutting off the rights of the non-moving party to present a case to the jury, see Egelston v. State Univ. College at Geneseo, 535 F.2d 752, 754 (2d Cir. 1976); Gibralter v. City of New York, 612 F. Supp. 125, 133-34 (E.D.N.Y. 1985) (stating that summary judgment "is a drastic remedy and should be applied sparingly"), the court should not grant summary judgment unless it is clear that all of the elements have been satisfied. See Auletta v. Tully, 576 F. Supp. 191, 195 (N.D.N.Y.

4

1983), aff'd, 732 F.2d 142 (2d Cir. 1984).  In addition, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'"  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Ford v. Reynolds, 316 F.3d at 354 (stating that "[i]n determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant") (citing Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002)).

Once the moving party discharges its burden of proof under Rule 56(c), the party opposing summary judgment "has the burden of coming forward with 'specific facts showing that there is a genuine issue for trial.'"  Phillips v. Kidder, Peabody & Co., 782 F. Supp. 854, 858 (S.D.N.Y. 1991) (quoting Fed. R. Civ. P. 56(e)).  Rule 56(e) "provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment.  Id. at 247-48.

In reversing a grant of summary judgment, the Second Circuit noted that the "[t]rial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material facts to be tried, not to deciding them."  Quaratino v. Tiffany & Co., 71 F.3d 58, 65 (2d Cir. 1995) (quoting Gallo v. Prudential Residential Services., Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir. 1994)).

B. Restitution Under ERISA

1) "Equitable Relief" Under Section 502(a)(3)

Plaintiff contends that Section 502(a)(3) of ERISA not only authorizes Union Labor to

bring this civil action to enforce the terms of the COB provision, but that it also authorizes an

award of restitution. (Pl.'s Mem.[6] at 5 (citing 29 U.S.C. § 1132(a)(3)). Defendants counter that

in the absence of specific identifiable funds, the court may not order the payment of

compensatory damages under ERISA. (Defs.' Mem. at 5).

It is well established that, in general, compensatory monetary damages are not available

under Section 502(a)(3)(B) of ERISA. See Mertens v. Hewitt Assocs., 508 U.S. 248, 257 (1993).

Section 502(a)(3)(B) specifically provides that a civil suit may be brought "to obtain other

appropriate equitable relief (i) to redress such violations [of ERISA] or (ii) to enforce any

provisions of this subchapter or the terms of the plan. . . ." 29 U.S.C. § 1132(a)(3)(B) (emphasis

added). Equitable relief typically does not include compensatory damages. See Mertens v.

Hewitt Assocs., 508 U.S. at 256. Money damages are "the classic form of legal relief," and

accordingly, "the Second Circuit has cautioned against suits purporting to seek equitable relief

while also seeking monetary damages." Vacca v. Trinitas Hosp., No. 05 CV 0368, 2006 WL

3314637, at *3 (E.D.N.Y. Nov. 14, 2006) (internal quotations omitted).

Plaintiff argues that because restitution was a form of relief typically available in courts

of equity, it is a proper form of relief for this violation of ERISA. (See Pl.'s Mem. at 5-6).

However, in a series of cases examining Section 502(a)(3), the Supreme Court has made it clear

that the type of relief sought by plaintiff is not available through an action brought pursuant to

---

[6]Citations to "Pl.'s Mem." refer to Union Labor Life Insurance Company's Memorandum
of Law in Support of Motion for Summary Judgment, dated July 5, 2006.

this provision of ERISA.

In the first of this series of cases, <u>Mertens v. Hewitt Associates</u>, the Supreme Court considered the extent to which Section 502(a)(3) of ERISA limits suits to recover money damages brought by plan participants against a non-fiduciary who participates in a breach of fiduciary duties that causes a loss to an ERISA plan. 508 U.S. 248. Rejecting the argument of the plan members that their suit was aimed at obtaining "appropriate equitable relief under Section 502(a)(3)(B)," the Court noted that, in essence, what the plaintiffs were seeking was really "compensatory damages - monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties." <u>Id.</u> at 255 (internal quotations and emphasis omitted). Since Section 502(a)(3)(B) limits recovery to appropriate "equitable" relief, the Court rejected plaintiffs' claims. <u>Id.</u> at 209-10. The Court also rejected the argument that given ERISA's roots in the common law of trusts, relief in the form of compensation for losses from a breach of duty would traditionally have been obtained in courts of equity and therefore, given the authority of courts to develop federal common law, the plaintiff's action should be allowed to proceed. <u>See</u> <u>id.</u> at 255-258.

In a subsequent case, <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>,[7] Janette Knudson,

---

[7]At the time defendants filed their objections to this Court's original Report and Recommendation, they argued to the district court that <u>Knudson</u> barred plaintiff's recovery of monetary relief under ERISA. In its Memorandum and Order adopting the Report, the district court, in response to the defendants' argument, noted that the argument, which had not been raised before the undersigned, was untimely. The court briefly distinguished <u>Great-West Life & Annuity Ins. Co. v. Knudson</u> from the present case, noting that the Report recommended only an award of equitable relief and citing certain factual differences between the two cases. (<u>See</u> Mem. at 1-2). Now that the parties have had an opportunity to fully brief the issue of whether the relief sought by plaintiff is equitable in nature, and with the additional guidance provided by more recent Supreme Court and Second Circuit cases, it becomes apparent that the guidelines set forth in <u>Knudson</u> apply in the present case.

who was injured in a car accident, received a settlement in satisfaction of her tort claim against the manufacturer of the car in which she was driving. See 534 U.S. 204, 207 (2002). Her husband's health plan, which had covered her medical expenses, sought reimbursement from the Knudsons of proceeds recovered from the third-party settlement. See id. at 207-209.

At the time of suit, the funds upon which the plan sought to impose a constructive trust had been placed in a "Special Needs Trust"[8] under California law. The Court, again analyzing the limitation of Section 502(a)(3) to "equitable relief," defined the term "equitable relief" as used in Section 502(a)(3) as "'those categories of relief that were typically available in equity.'" Id. at 210 (emphasis in original) (quoting Mertens v. Hewitt Assocs., 508 U.S. at 256). Even though restitution was in fact available both in equity and in law, the Court in Knudson rejected the argument that because the plan merely sought restitution, such relief was necessarily equitable. See id. at 212. Instead, the Court held that it was necessary to determine first if a claim for restitution brought under Section 502(a)(3)(B) was properly understood as sounding in law or in equity. See id. at 213. To make this assessment, both the basis of the claim and the nature of the remedies sought must be analyzed. See id. The Court explained that a plaintiff seeking restitution in equity would do so "ordinarily in the form of a constructive trust or equitable lien. . . ." Id. Although constructive trusts and equitable liens are by their nature equitable, the Court held that in order to properly assert a constructive trust or equitable lien in equity, plaintiff must establish that "money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." Id. In drawing a distinction between equitable restitution and money

---

[8]Plaintiff suggests that the outcome in the case would have been different if the plan had attempted to obtain recovery from the Trust. (Pl.'s Mem. at 11).

8

damages, the Court in <u>Knudson</u> noted:

> . . . where the property sought to be recovered or its proceeds have been dissipated so that no product remains, the plaintiff's claim is only that of a general creditor and the plaintiff cannot enforce a constructive trust or equitable lien upon other property of the defendant. Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff <u>particular</u> funds or property in the defendant's possession.

<u>Id.</u> at 213-14 (emphasis added).

The Court in <u>Knudson</u> concluded that because the plan's claim was not that the Knudsons held "particular funds that in good conscience, belong to petitioners," but rather sought to impose personal liability on the Knudsons to pay a sum of money based on a contractual provision in the plan, the action was "'quintessentially an action at law.'" <u>Id.</u> at 210 (quoting <u>Wal-Mart Stores, Inc. v. Wells</u>, 213 F.3d 398, 401 (7th Cir.), <u>cert. denied</u>, 531 U.S. 985 (2000)). Since the funds were not in the Knudsons' possession, but rather were in a separate trust, the Court concluded that the relief sought was not equitable in nature, and therefore upheld the Ninth Circuit's dismissal of the plan's suit under Section 502(a)(3). <u>Id.</u>

Defendants argue that the language in <u>Knudson</u> makes it clear that unless there is a specific fund or identifiable property, the Court may not award a payment of monies from the defendants' general assets. (Defs.' Mem. at 8). They cite numerous cases in which claims for money damages characterized as equitable claims were denied because there was no specific fund upon which to impose the restitution. (<u>Id.</u> (citing <u>Nechis v. Oxford Health Plans, Inc.</u>, 421 F.3d 96, 103 (2d Cir. 2005); <u>North Am. Coal Corp. v. Roth</u>, 395 F.3d 916, 917 (8th Cir.), <u>cert. denied</u>, 126 S.Ct. 145 (2005); <u>Weinreb v. Hosp. for Joint Diseases</u>, 285 F. Supp. 2d 382, 388

(S.D.N.Y. 2003), aff'd, 404 F.3d 167 (2d Cir. 2005); Neidich v. Neidich, 222 F. Supp. 2d 357, 375 (S.D.N.Y. 2002)). Plaintiff cites cases from other circuits that awarded restitution when plan benefits were erroneously paid to employees or health care providers, but all of these cases were decided prior to the Supreme Court's more recent guidance in Sereboff on Section 502(a)(3). (See Pl.'s Mem. at 5-6 (citing Blue Cross & Blue Shield of Alabama v. Weitz, 913 F.2d 1544 (11th Cir.), rehearing denied, 921 F.2d 283 (11th Cir. 1990); Provident Life & Accident Ins. Co. v. Waller, 906 F.2d 985 (4th Cir.), cert. denied, 498 U.S. 982 (1990); Northern Calif. Food Employer's & Retail Clerks Union Benefit Fund v. Diada's Italian - American Pastry Co., Inc., 645 F. Supp. 160 (N.D. Cal. 1986))).

In its latest analysis of the extent of relief available under Section 502(a)(3), the Supreme Court in Sereboff v. Mid Atlantic Services, Inc., 126 S. Ct. 1869 (2006), expanded upon the holding in Knudson to clarify the distinction between an equitable lien sought as a matter of restitution and an equitable lien established by agreement. Id. In Sereboff, the beneficiaries of a plan recovered damages where, pursuant to agreement, an equitable lien was asserted prior to the creation of the fund. See id. at 1875-76 (citing Barnes v. Alexander, 232 U.S. 117 (1914)). In Sereboff, the beneficiaries of a plan recovered compensatory damages through the settlement of a tort action. See id. at 1872-73. The plan, administered by Mid Atlantic Medical Services, Inc. ("Mid Atlantic"), contained a provision similar to the one in Knudson whereby a plan beneficiary who was injured by a third party was required to reimburse Mid Atlantic for benefits paid if the beneficiary recovered for the injuries from the third party. Id. Unlike the situation in Knudson, however, Mid Atlantic had, even prior to the settlement, asserted a lien, based upon agreement, on the specific fund created by any anticipated proceeds from the tort action to reimburse the plan for medical expenses paid to the Sereboffs. See id. In distinguishing between types of

10

equitable liens, the Court explained that at common law, where an equitable lien was imposed as restitutionary relief, the plaintiff was subject to strict tracing rules that required the plaintiff to trace his assets improperly acquired by defendant to the asset's products or substitutes. See id. at 1875. However, where an equitable lien was asserted pursuant to an agreement, there was no strict "tracing" requirement. See id. at 1872-73. The Court found that because Mid Atlantic Sought to impose a lien based on a provision in the plan, strict tracing was not required. See id. at 1875. The relief sought by Mid Atlantic was nonetheless equitable in nature because it sought to impose an equitable lien or constructive trust upon "specifically identifiable funds that were within the possession and control of the Sereboffs" and that had been specifically set aside and preserved from the tort settlement. Id. at 1874 (internal citations omitted). The Court held that the fact that the fund was not in existence at the time the contract was established did not defeat the lien. Id. Therefore, Mid Atlantic's action could properly proceed under Section 502(a)(3). Id. at 1878. The Court found that not only was the relief sought by Mid Atlantic equitable in nature because it sought "specifically identifiable funds that were within the possession and control of the Sereboffs," id. at 1874 (internal citations omitted), but that the basis for Mid Atlantic's claim was also considered "equitable." Id. at 1875. The Court recognized that Mid Atlantic had sought to impose an equitable lien against specific property, maintained "in an investment account," that was in the Sereboffs' possession, and therefore Mid Atlantic's action could properly proceed under Section 502(a)(3). Id. at 1873, 1878 (internal citations omitted).

Plaintiff here argues that Sereboff is controlling because "'no tracing requirement. . . applies to equitable liens by agreement or assignment.'" (Pl.'s Mem. at 7 (quoting Sereboff v. Mid Atlantic Medical Serv's., Inc., 126 S. Ct. at 1875)). However, aside from discussing the tracing requirement, the Court in Sereboff reaffirmed its prior holding that, whether by agreement

or as restitution, imposition of an equitable lien requires that the plaintiff "specifically identif[y] a particular fund, distinct from [defendant's] general assets." Sereboff v. Mid Atlantic Medical Serv's., Inc., 126 S. Ct. at 1875 (citing Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. at 214 (requiring the identification of "particular funds or property in the defendant's possession")); see also Coan v. Kaufman, 457 F.3d 250, 263 (2d Cir. 2006).

The Second Circuit has interpreted Sereboff as specifically maintaining the requirement that plaintiff seek particular funds in defendant's possession. In Coan v. Kaufman, 457 F.3d 250, the Second Circuit made it clear that Sereboff "reaffirmed the holding of Knudson that money damages are unavailable under § 502(a)(3)" when the plaintiff does "not seek to recover a particular fund from the defendant." 457 F.3d at 263; see also Nechis v. Oxford Health Plans, Inc., 421 F.3d at 103 (finding no claim in equity where defendant did not segregate the monies upon which plaintiff sought to impose a trust, and where there were no allegations that the funds were kept in a separate account); Vacca v. Trinitas Hospital, 2006 WL 3314637, at *4 (finding no claim in equity where "there is no indication or argument that the alleged overpayment in this case was retained separately from defendant's other funds").

In a recent decision, this Court rejected the argument that it had jurisdiction to impose a constructive trust or equitable lien in the absence of clearly traced, particularized funds. See Vacca v. Trinitas Hospital, 2006 WL 3314637, at *4. The Court recognized the distinction drawn by Knudson and Sereboff, and denied a claim by the trustees and third party administrator of a plan, seeking to recover overpayments made to a medical care provider on behalf of a plan beneficiary. See id. Noting that only claims of equitable restitution "'in the form of a constructive trust or an equitable lien'" on clearly traced, particular funds in defendant's possession could proceed under Section 502(a)(3), the court in Vacca rejected plaintiffs'

argument that the court had jurisdiction to order the requested compensation simply because plaintiffs could identify specific checks that had been paid to the defendant Hospital. Id. (quoting Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. at 213, and citing Nechis v. Oxford Health Plans Inc., 421 F.3d at 103).

The Vacca court also rejected the argument that recovery should be permitted under a theory of unjust enrichment. Id. (citing Blanck v. Consolidated Edison Retirement Plan, No. 02 CV 7718, 2006 WL 177003, *1 (S.D.N.Y. Jan. 24, 2006) (holding that "'courts cannot turn to Federal common law to fill gaps in ERISA's civil remedy provisions'")). Finding that there was no distinction between the plaintiffs' claims and that of a traditional collection action, the Vacca court held that because, unlike in Sereboff, there was no lien or specific identification of funds or property, the court was without jurisdiction to consider plaintiffs' claims under Section 502(a)(3) of ERISA. Id. at *5.

### 2) Application

In this case, there is no dispute that the Olsten Plan did not maintain a separate account or segregated fund for the payment of claims for Maribel Rodrigues. (See Defs.' Mem. at 5). Plaintiff asserts, however, that the Olsten Plan "is in possession of money representing reimbursement for medical expenses already paid by Union Labor Life." (Pl.'s Mem. at 6-7). Plaintiff in essence argues that because it paid medical expenses that defendants owed, the money that defendants saved was transformed into a particularized fund apart from defendants' general assets sufficient to satisfy the requirements of an equitable lien. (See Pl.'s Mem. at 8 (asserting that by refusing "its obligation to pay benefits . . . the Olsten Plan caused to be created

13

a fund of money that it should have paid to the beneficiary"")).

This theory impermissibly stretches the boundaries of equitable relief far beyond the limits prescribed by the Supreme Court to include every remedy that would be available at law. Plaintiff's argument to compel the creation of an equitable lien or constructive trust could be made any time a party failed to properly make payment from its general assets. It was this type of broad interpretation of equitable relief under Section 502(a)(3)(B) that the Supreme Court warned against in <u>Mertens</u>, and reaffirmed in <u>Knudson</u>. See <u>Mertens v. Hewitt Assocs.</u>, 508 U.S. at 257-58 (stating that "we will not read the statute to render the modifier ["equitable"] superfluous"); <u>Great-West Life & Assn. Ins. Co. v. Knudson</u>, 534 U.S. at 210-11 (rejecting petitioners' claims where they sought "in essence, to impose personal liability on respondents for a contractual obligation to pay money - - relief that was not typically available in equity").

To the extent that plaintiff argues that "the Olsten Plan had a contractual undertaking requiring it to pay those funds over to Union Labor Life" (Pl.'s Mem. at 7), plaintiff has not indicated what "those funds" are to which it is referring. Thus, even were this a contractually based equitable lien, enabling it to avoid the tracing requirement, plaintiff must nonetheless seek payment from a specific fund, rather than from defendants' general assets. See <u>Sereboff v. Mid Atlantic Medical Serv's., Inc.</u>, 126 S. Ct. at 1875. Plaintiff has submitted no evidence to support its argument that defendants possess any specific fund representing gains from their failure to pay the Rodrigues family's claims. To the contrary, following a request for additional discovery on this very issue, defendants' responses to the discovery requests made it clear that no such separate account was maintained by the Olsten Plan. (Defs.' Mem. at 5). Nor is the situation analogous to that in <u>Sereboff</u>, where a lien was asserted on funds that were maintained in a particular "investment account." See <u>Sereboff v. Mid Atlantic Medical Serv's., Inc.</u>, 126 S. Ct. at

14

1873. Here, as in <u>Knudson</u>, <u>Coan</u>, <u>Nechis</u>, and <u>Vacca</u>, no such specific particularized funds exist, and thus plaintiff cannot be awarded restitution under Section 503(a)(3).

Accordingly, because plaintiff does not identify any specific assets or funds in defendants' possession, but rather seeks recovery from defendants' general assets, its claim is not for restitution at equity but rather, is a claim, as in <u>Knudson</u>, that defendant is contractually obligated to pay funds to plaintiff.[9] While the limitation of Section 502(a)(3)(B) to equitable relief produces a seemingly unfair result under the circumstances, the Court concludes that, under the restrictions of ERISA, it lacks jurisdiction to issue an injunction requiring the defendant to restore funds to plaintiff and thus "transform what is effectively a money damages request into equitable relief." <u>Coan v. Kaufman</u>, 457 F.3d at 264 (internal quotation omitted); <u>Vacca v. Trinitas Hospital</u>, 2006 WL 3314637, at *4 (holding that "[a]lthough plaintiffs have framed their

---

[9]Plaintiff argues that the Court should impose a constructive trust in its favor, contending that a constructive trust is designed to give the court flexibility to fashion a remedy to deal with unconscionable conduct. (Pl.'s Mem. at 8-9). Plaintiff contends that the imposition of a constructive trust is particularly appropriate here, where plaintiff erroneously paid benefits that should have been paid by defendants. (<u>Id.</u> at 10 (citing <u>Mid-Century Ins. Co. v. Menking</u>, 327 F. Supp. 2d 1049, 1056-57 (D. Neb. 2003) (imposing constructive trust where ERISA plan sought reimbursement of benefits from beneficiary and uninsured motorist insurer, and noting that if defendant "were to receive the money, he would receive what appears to be a windfall in obvious derogation of the Plan's subrogation interest. In the court's view, this is the type of equitable relief contemplated by § 502(a)(3) and <u>Great West</u> . . . "). However, in <u>Menking</u>, which was issued prior to the Supreme Court's decision in <u>Sereboff</u>, there was a specific traceable fund upon which the court imposed the constructive trust. 327 F. Supp. 2d at 1056-57. The Supreme Court in <u>Knudson</u> specifically considered both equitable liens and constructive trusts in its analysis, indicating no difference in the requirement that a plaintiff demand specific particularized funds in a defendant's possession. See <u>Great-West Life & Assn. Ins. Co. v. Knudson</u>, 534 U.S. at 213. The Second Circuit has similarly recognized the requirement of a "specifically identified fund" in making such claims. <u>Coan v. Kaufman</u>, 457 F.3d at 263. Indeed, the <u>Menking</u> case cited by plaintiff also noted the requirement of particularized, clearly traceable funds. 327 F. Supp. 2d at 1056. Plaintiff does not dispute that in order to impose a constructive trust under 502(a)(3) it must seek particular funds in defendants' possession. Rather, plaintiff argues that such a fund exists in this case. (<u>See</u> Pl.'s Mem. at 8). However, this Court has found that no such particularized funds exist here. Accordingly, this Court does not have jurisdiction to award plaintiff a constructive trust under Section 502(a)(3).

15

claim for restitution as an equitable one, the gravamen of this action remains a claim for money compensation and that, above all else, dictates the relief available") (internal quotation omitted).

Accordingly, it is respectfully recommended that plaintiff's motion for summary judgment on its claims for restitution be denied and defendants' cross-motion be granted.


## C. Equitable Subrogation

Plaintiff also seeks recovery under a theory of equitable subrogation, pursuant to Section 502(a)(3), as "a remedy typically available in equity." (Pl.'s Mem. at 12). Subrogation "simply means substitution of one person for another; that is, that one person is allowed to stand in the shoes of another and assert that person's rights against the defendant." JPMorgan Chase Bank v. Cook, 318 F. Supp. 2d 159, 165 (S.D.N.Y. 2004) (internal quotations omitted), reconsideration denied, 322 F. Supp. 2d 353 (S.D.N.Y. 2004). Equitable subrogation in this case would permit the rights of the subrogor, the beneficiary Maribel Rodrigues, to become the rights of the subrogee - - plaintiff. See id. at 165. Plaintiff contends that because Ms. Rodrigues was entitled to receive benefits from the Olsten Plan, equity permits plaintiff to assert Ms. Rodrigues' rights against the Olsten Plan, and thereby receive restitution for the amounts that were wrongfully paid. (Pl.'s Mem. at 12-13). Plaintiff has pointed to no provision in either of the plans that would entitle it to subrogation. Instead, plaintiff argues that it is "universally recognized" that the amount in question was "due and owing from the Olsten Plan," and accordingly, "equity dictates that Union Labor Life is entitled to restitution from the Olsten Plan." (Id. at 13).

Apart from the fact that plaintiff has cited no cases in the context of an ERISA claim related to subrogation under a COB provision, defendants urge the Court to reject plaintiff's argument for two reasons. First, defendants argue that the position now taken by plaintiff is

inconsistent with its previous posture in this lawsuit - - namely, that plaintiff had its own non-derivative right to sue directly under ERISA. (See Defs.' Mem. at 11). Defendants assert that plaintiff should be estopped from arguing that it is entitled to recovery through equitable subrogation because plaintiff "has consistently argued (at significant legal expense to defendant) that it had its own non-derivative right to sue directly under ERISA." (Defs.' Mem. at 11). However, while plaintiff has pursued a non-derivative claim, it has, from the inception of the law- suit, simultaneously asserted that it was entitled to recovery through equitable subrogation. (See Am. Compl. ¶¶ 34-37). Plaintiff's argument for its own non-derivative rights, which was placed in greater controversy by defendants' summary judgment motions, does not preclude it from pursuing its longstanding alternative claim of equitable subrogation.

Second, defendants have raised numerous defenses based on the evidence, suggesting, inter alia, that: (1) Brittany Rodrigues was not properly covered by the Olsten Plan because when her mother first commenced employment with Olsten, she declined coverage under the Olsten Plan (Marks Decl., Ex. B); (2) Maribel Rodrigues may have made certain misrepresentations regarding the cancellation of her prior insurance coverage and the extent of her pre-natal care; and (3) the claims were not properly submitted to W.J. Jones under the terms of the Olsten Plan. (Defs.' Mem. at 4-5). While these defenses may not be applicable to plaintiff's non-derivative claims, the parties agree that such defenses are available to defendants when plaintiff "stands in the shoes" of Brittany Rodrigues via equitable subrogation. (See Pl.'s Reply at 5). Despite the defendants' claim to the contrary, plaintiff argues that there is in actuality no dispute that Brittany was covered by the Plan. (Id. at 2). Plaintiff contends that the district court has already found that the Olsten Plan is the primary insurer and that the claims for benefits were timely submitted. (Id.) Plaintiff contends that defendants should therefore be

estopped from arguing that Brittany was not eligible for coverage. (Id.)

The district court's earlier declaratory judgment in this case was, however, narrower than plaintiff suggests, finding that "(a) the Olsten Plan is primary to the Milk Fund Plan, (b) that the 12-month reporting requirement does not preclude plaintiff's claim for reimbursement. . . and (c) that Union Labor is not bound to the same procedural requirements as a beneficiary when seeking to enforce the COB provisions of the Plan at issue." (Order at 3-4). The earlier summary judgment decision was in fact designed to address only limited issues of standing and the application of the 12-month reporting requirement, and did not, as plaintiff suggests, determine that funds were "due and owing from the Olsten Plan." (Pl.'s Mem. at 13). Defendants' newly raised defenses have accordingly not yet been evaluated by the court. Having reviewed the documents submitted in support of defendants' defenses, this Court notes that there is sufficient evidence to raise a disputed issue of material fact as to their validity. (See Marks Decl., Exs. A-H). However, this finding is not alone sufficient to resolve the summary judgment motion on this claim because plaintiff must first establish that it is legally entitled to recovery under a theory of equitable subrogation.

Unfortunately, the parties failed to address this issue in any detail in their motion papers. Defendants concede in their papers that "[f]rom the outset of the litigation, the Olsten Plan has argued that ULL's rights, if any, were as a subrogee of Maribel Rodrigues . . . ." (Defs.' Mem. at 11). Defendants' apparent concession of this point, however, is insufficient to satisfy this Court that the plaintiff has a right to bring a claim of equitable subrogation in these circumstances.

Equitable subrogation is generally appropriate where the "'property of one person is used in discharging an obligation owed by another. . . under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be

subrogated to the position of the obligee.'" In re Chateaugay Corp., 89 F.3d 942, 947 (2d Cir. 1996) (citing Restatement of Restitution § 162 (1936)). Subrogation is "closely akin to, if not a part of, the equitable principle of 'restitution' and 'unjust enrichment.'" See 83 C.J.S. Subrogation § 3.

In Sereboff, the plaintiff based its claim upon a theory of equitable subrogation. The Court rejected this characterization because it found that the right to subrogation in that case was based upon agreement, not equity. See Sereboff v. Mid Atlantic Medical Serv's., Inc., 126 S. Ct. at 1877. The Court explained that plaintiff's "claim is not considered equitable because it is a subrogation claim . . . [but rather] because it is indistinguishable from an action to enforce an equitable lien established by agreement." Sereboff v. Mid Atlantic Medical Serv's., Inc., 126 S. Ct. at 1877. The Court went on to characterize the "parcel of equitable defenses" that the Sereboffs raised and that would be available to them in an equitable subrogation case, as "beside the point" because plaintiff "need not characterize its claim as a freestanding action for equitable subrogation." Id. The Court thus briefly considered, but failed to directly address, how such a "freestanding action for equitable subrogation" should be analyzed under Section 502(a). In fact, the agreement-based subrogation that the Court recognized in Sereboff appears to have merely been the vehicle through which plaintiffs in that case were asserting their claim for an equitable lien.

In this case, such a lien would not be appropriate because, as discussed supra, there is no particularized fund available. Moreover, this Court has determined that neither a claim of restitution nor unjust enrichment is available to plaintiff because this case is, in essence, a suit for legal monetary damages. See supra at 15. Plaintiff cannot recover restitution through an equitable lien or constructive trust because it has failed to identify a particularized fund in

19

defendants' possession. See Coan v. Kaufman, 457 F.3d at 263 (noting that "money damages are unavailable under Section 502(a)(3) when the plaintiff does not seek to recover a particular fund from the defendant"). Thus, plaintiff's claim for restitution founded upon a theory of equitable subrogation would also appear to fail.[10]


D. Subrogation and Section 502(a)(1)

Perhaps plaintiff seeks recovery under Section 502(a)(1) of ERISA. Although plaintiff has failed to articulate this argument, the Court notes that other non-beneficiaries have sought to avoid the equitable limitation found in Section 502(a)(3) by stepping into the shoes of beneficiaries or participants and suing under Section 502(a)(1). However, even if Union Labor had attempted to pursue this route, the Court is not persuaded that such a course would be permissible.

A participant or beneficiary, unlike a fiduciary, may sue pursuant to Section 502(a)(1) "to recover benefits due to him under the terms of his plan, [or] to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1). Section 502(a)(1) thus does not limit plan beneficiaries

---

[10]Defendant argues that even if the Court were to determine that plaintiff was entitled to recover from the Olsten Plan, judgment could only be enforced against the Olsten Plan and not against its successor in interest, Adecco, Inc. (See Def's. Mem. at 9 (citing Coan v. Kaufman, 457 F.3d at 264; Moore v. Berg Enterprises, Inc., 3 F. Supp. 2d 1245, 1248 (D. Utah 1998)), aff'd, 201 F.3d 448 (10th Cir. 1999)). In plaintiff's Reply Memorandum of Law in Further Support of Motion for Summary Judgment, dated August 17, 2006 ("Pl.'s Reply"), plaintiff disputes this position, contending that when a plan administrator succeeds another administrator, the successor assumes all of the rights and obligations of its predecessor. (Pl.'s Reply at 5 (citing La Forest v. Former Clean Air Holding Co., Inc., 376 F.3d 48 (2d Cir. 2004); Gainnone v. Metropolitan Life Ins. Co., 311 F. Supp. 2d 168, 175 (D. Mass. 2004)). Moreover, plaintiff points out that in a filing with the Securities Exchange Commission, Adecco explicitly represented that it would "assume all liabilities relating to claims and premiums under [the Olsten] welfare benefit plans." (Id.) Since there remains an open question as to whether plaintiff is entitled to recovery in any event, the Court has not addressed this argument.

solely to equitable relief. Unlike in Sereboff, where plaintiff sought reimbursement from beneficiaries who had received a settlement from a tortfeasor, plaintiff in this case would be stepping into the shoes of its beneficiary in order to assert her rights against another ERISA fiduciary. It is thus at least theoretically possible that plaintiff in this case could seek non-equitable relief under Section 502(a)(1), a subsection of ERISA that is unavailable to fiduciaries, but under which beneficiaries are permitted to bring suit. See Wilkins v. Mason Tenders Dist. Council Pension Fund, 445 F.3d 572, 578-83 (2d Cir. 2006) (discussing the difference between causes of action under Section 502(a)(1) and Section 502(a)(3)).

While the Circuit has not directly addressed this question, courts in this district have noted that even if a beneficiary had properly assigned his rights to an insurer in a subrogation clause, "it is not clear that such a designation would pass jurisdictional muster under the Second Circuit's literal construction of § 502(a) of ERISA." Liberty Life Assurance Co. of Boston v. Toys "R" US, Inc., 901 F. Supp. 556, 562 (E.D.N.Y. 1995); see also Clinical Partners v. Guardian Life Insurance Co. of America, No. 94 CV 1199, 1996 WL 294361, at *3-4 (E.D.N.Y. May 30, 1996) (noting that the Second Circuit had not ruled on whether ERISA permits assignments by beneficiaries and finding that "permitting assignments to third parties would undermine ERISA's purpose").

The Third Circuit has held that a fiduciary may not sue under Section 502(a)(1) in part because "Congress simply made no provision in § 1132(a)(1)(B) for persons other than participants and beneficiaries to sue, including persons purporting to sue on their behalf . . . [and] the intentions of the parties and the district court regarding federal jurisdiction are irrelevant to the determination whether such jurisdiction exists." Northeast Dep't ILGWU v. Teamsters Local Union No. 229, 764 F.2d 147, 154 n.6 (3d Cir. 1985); but see Pascack Valley Hosp. v. Local

464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 400-401 n.7 (3d Cir. 2004) (noting that although "[b]y its terms, standing under [Section 502(a)(1)] is limited to participants and beneficiaries[,]" and a hospital, as neither, did not have standing to sue, the question of whether a health care provider may assert a claim under Section 502(a) when a participant or beneficiary has assigned such claim remained unanswered because the holding in ILGWU also rested on a lack of actual assignment) (citing cases), cert. denied, 546 U.S. 813 (2005).

The Fifth Circuit has found that where a participant has validly assigned his or her rights to a health care provider, that provider may bring suit under Section 502(a)(1). See Tango Transport v. Healthcare Financial Services LLC, 322 F.3d 893-92 (5th Cir. 2003). However, that court based this extension to heath care providers in large part on the concern that precluding such assignments could harm participants by discouraging medical providers from helping beneficiaries with immediate care because they were unable to pay. See id. at 894. That holding was also explicitly limited to healthcare providers, and the court noted that it "need not reach whether *all* assignees or sub-assignees of plan participants have standing to sue." Id. (emphasis in original).

To bring a claim under Section 502(a)(1) in this case, plaintiff would have to overcome the skepticism of courts in this district toward fiduciaries bringing suit under this subsection by subrogation. Plaintiff would additionally have to persuade this Court that equitable subrogation, rather than subrogation through agreement, would enable a fiduciary to bring suit where they would otherwise be precluded. However, as plaintiff has failed to make any argument for standing pursuant Section 502(a)(1), this Court declines sua sponte to determine that plaintiff has standing to bring a claim on this doubtful basis.

In summary, the Court is hesitant to decide whether or not plaintiff may properly step into

22

the shoes of Brittany Rodrigues under a theory of equitable subrogation in order to thereby obtain relief through either Sections 502(a)(1) or 502(a)(3) without additional briefing from both parties beyond the scant few paragraphs on the topic that have so far been submitted. Neither party has effectively argued this issue, and accordingly, defendants' motion for summary judgment is denied without prejudice. Plaintiff's motion for summary judgment on this matter is, however, denied in its entirety because defendants have demonstrated, in any event, issues of fact relating to the Osten Plan's defenses to this claim.

E. Inherent Power to Enforce Ruling

Plaintiff's final argument is that, pursuant to 28 U.S.C. § 2202, the Court has the inherent power to fashion appropriate relief to give effect to its declaratory judgment order, including an award of monetary relief. (Pl.'s Mem. at 13-14). Particularly here, where ERISA lacks an express provision dealing with disputes under COB provisions, plaintiff argues that the Court should revisit its earlier order and consider the viability of a federal common law claim for unjust enrichment and restitution. (See id. at 14-15 (citing cases)).

It has been established that the Declaratory Judgment Act, 28 U.S.C. § 2202, does not expand the court's jurisdiction or create new substantive rights, see 12 James Wm. Moore et al., Moore's Federal Practice § 57.02 [1], but rather is merely "a procedural device" that was not intended to allow the plaintiff "to avoid the requirements imposed by the substantive law as a predicate to obtaining such relief." B. Braun Med., Inc. v. Abbott Labs, 124 F.3d 1419, 1428 (Fed. Cir. 1997) (denying request for monetary damages despite declaration of patent misuse where no damages are otherwise provided for). In this case, the court's prior ruling addressed specific questions about whether or not plaintiff had standing to sue as a life insurance company,

whether it was bound by the time limits that would be imposed on a plan beneficiary, and whether or not the Olsten Plan was primary to the Milk Fund Plan. Apart from the fact that the court did not fully address the issue of whether plaintiff properly sought equitable relief under Section 502(a)(3)(B), and did not determine whether defendants were liable to plaintiff, the Declaratory Judgment Act does not provide a basis on which to award plaintiff monetary damages.

As for the argument that the Court should create federal common law to deal with this apparent gap in the law, the Court in Mertens specifically noted that the ERISA "statute's carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.'" 508 U.S. at 254 (citing Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 146-147 (1985)). The Court held that the "authority of courts to develop a 'federal common law' under ERISA . . . is not the authority to revise the text of the statute." Id. at 259 (citing Firestone Tire v. Rubber Co. v. Brick, 489 U.S. 101, 110-11 (1989)); see also Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134 (noting the "strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly"); Gerosa v. Savasta & Co., Inc., 329 F.3d 317, 322-23 (2d Cir.) (noting that the Supreme Court has made it clear that courts "are no longer free to fill in unwritten gaps in ERISA's civil remedies"), cert. denied, 540 U.S. 967 (2003); Vacca v. Trinitas Hospital, 2006 WL 3314637, at *4 (noting that "within the Second Circuit, courts cannot turn to Federal common law to fill gaps in ERISA's civil remedy provisions") (internal quotations and citations omitted).

Accordingly, the Court declines to recommend that a suit for damages be implied under these circumstances simply because there seems to be a gap in coverage under ERISA.

<u>CONCLUSION</u>

For the reasons set forth above, the Court respectfully recommends that, with the exception of plaintiff's claim of equitable subrogation, for which more briefing is required, the court deny plaintiff's motion for summary judgment and grant judgment in favor of defendants on plaintiff's claim for restitution under Section 502(a)(3).

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; <u>Small v. Secretary of Health and Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties electronically through the Electronic Case Filing (ECF) system.

**SO ORDERED.**

Dated: Brooklyn, New York
      August 17, 2007

_____/s/_____
Cheryl L. Pollak
United States Magistrate Judge
