UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THE UNION LABOR LIFE INSURANCE CO.,

                Plaintiff,

     - against -

OLSTEN CORPORATION HEALTH AND
WELFARE BENEFIT PLAN, et al.,

                Defendants.
------------------------------------------------------------X

**R E P O R T   A N D
RECOMMENDATION**

01 CV 6259 (DLI)

On September 21, 2001, plaintiff The Union Labor Life Insurance Company ("Union

Labor") commenced this action against defendants Olsten Corporation Health and Welfare

Benefit Plan (the "Olsten Plan"), Adecco, Inc. ("Adecco"), as successor in interest to the Olsten

Corporation ("Olsten"), and Connecticut General Life Insurance Company ("Connecticut

General"), seeking a declaratory judgment and asserting claims for equitable subrogation and

unjust enrichment. In both the original Complaint and the Amended Complaint ("Am. Compl."),

which was filed on December 28, 2001, plaintiff alleged that it is entitled to recover from the

Olsten Plan damages in the amount that Union Labor erroneously paid in benefits to cover the

medical expenses incurred by Brittany Rodrigues, which under the Olsten Plan's Coordination of

Benefits ("COB") clause, should have been paid for by the Olsten Plan. Plaintiff now moves for

summary judgment claiming that: 1) it is entitled to assert a claim for equitable subrogation

under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1132(a); 2) it is entitled to receive damages based on the Olsten Plan's

breach of its fiduciary duties under Section 502(a)(2) of ERISA, 29 U.S.C. § 1109(a); and 3) the

court should revisit the issue of preemption insofar as it applies to plaintiff's equitable state law claims against Olsten.

## FACTUAL BACKGROUND

As set forth in greater detail in this Court's earlier Reports, in January 1997, Maribel Rodrigues, an employee of Olsten, applied for and received single medical benefits coverage under the Olsten Plan. <u>Union Labor Life Ins. Co. v. Olsten Corp. Health and Welfare Benefit Plan</u>, 617 F. Supp. 2d 131, 138 (E.D.N.Y. 2008)[1]. She later amended the coverage to include her daughter, Brittany Rodrigues, born December 26, 1997. <u>Id.</u> Brittany Rodrigues was also covered by her father's plan, offered by the Trustees of the Milk Industry - Local 680 Welfare Fund (the "Milk Fund Plan"), which was administrated by Union Labor. (<u>Id.</u>, Pl.'s 56.1 Stmnt[2] ¶ 1).

Both the Olsten Plan and the Milk Fund Plan contain a Coordination of Benefits provision which states that priority of coverage will be determined according to which parent's birthday occurs first in the calendar year, commonly referred to as the "birthday rule." <u>Union Labor Life Ins. Co. v. Olsten Corp. Health and Welfare Benefit Plan</u>, 617 F. Supp. 2d at 138-39. The district court has declared that under this "birthday rule," the Olsten Plan was Brittany

---

[1] Citations to <u>Union Labor Life Ins. Co. v. Olsten Corp. Health and Welfare Benefit Plan</u>, 617 F. Supp. 2d 131, 138 (E.D.N.Y. 2008) refer to this Court's earlier Report and Recommendation of August 17, 2007, and the Honorable Dora L. Irizarry's Memorandum and Order of March 26, 2008, adopting the Report and Recommendation.

[2] Citations to "Pl.'s 56.1 Stmnt" refer to Union Labor Life Insurance Company's Statement of Undisputed Material Facts in Support of Renewed Motion for Summary Judgment, dated September 10, 2008.

Rodrigues' primary insurer.  (Mem. 1[3] at 3).

Brittany Rodrigues was born with a congenital heart defect and as a result, her family incurred medical expenses of over $300,000.00 from December 1997 through November 30, 1998.  (Rept. 1[4] at 3; Union Labor Life Ins. Co. v. Olsten Corp. Health and Welfare Benefit Plan, 617 F. Supp. 2d at 139).  The Rodrigues family and the health care providers submitted claims for reimbursement to the claims administrator for the Olsten Plan, W.J. Jones Administrative Services, Inc. ("W.J. Jones"), now known as USI Administrators, Inc. ("USI").  (Rept. 1 at 3; Union Labor Life Ins. Co. v. Olsten Corp. Health and Welfare Benefit Plan, 617 F. Supp. 2d at 139; Pl.'s 56.1 Stmnt ¶ 8; Defs.' 56.1 Stmnt[5] ¶ 8).  It is undisputed that W.J. Jones denied primary coverage for the claims.[6]  (Rept. 1 at 3; Union Labor Life Ins. Co. v. Olsten Corp. Health and Welfare Benefit Plan, 617 F. Supp. 2d at 139).  Claims were also submitted to the Milk Fund Plan for Brittany Rodrigues' medical costs and the Milk Fund Plan paid over $300,000.00 in claims for Brittany Rodrigues.  (Rept. 1 at 3; Union Labor Life Ins. Co. v. Olsten Corp. Health and Welfare Benefit Plan, 617 F. Supp. 2d at 139).  At the time the payments were made, the

---

[3]Citations to "Mem. 1" refer to the Honorable Dora L. Irizarry's earlier Memorandum and Order of March 14, 2005.

[4]Citations to "Rept. 1" refer to this Court's earlier Report and Recommendation of January 3, 2004.

[5]Citations to "Defs.' 56.1 Stmnt" refer to the Olsten Plan's Statement of Undisputed Material Facts in Support of Cross Motion for Summary Judgment, dated October 20, 2008.

[6]Defendants, however, claim that coverage was properly denied because the family failed to submit a "primary coverage voucher" (Defs.'56.1 Stmnt ¶ 9), failed to submits its claims within the specified time limit (Rept. 1 at 24), and because records indicated that Ms. Rodrigues had other insurance. (Rept. 1 at 3).  Defendants also claimed that Maribel Rodrigues misrepresented her eligibility to enroll in the plan. (Defs.'56.1 Stmnt ¶ 8).

Milk Fund claims that it was unaware that Brittany had insurance under the Olsten Plan.[7] (Rept. 1 at 3; Union Labor Life Ins. Co. v. Olsten Corp. Health and Welfare Benefit Plan, 617 F. Supp. 2d at 139; Pl.'s 56.1 Stmnt ¶ 12). Upon learning of the Olsten Plan coverage, the Milk Fund Plan sought reimbursement in accordance with the COB provisions in the plans. (Rept. 1 at 3-4; Union Labor Life Ins. Co. v. Olsten Corp. Health and Welfare Benefit Plan, 617 F. Supp. 2d at 139).

The Olsten Plan has consistently refused to reimburse Union Labor Life.

## PROCEDURAL HISTORY

In November 2002, the Olsten Plan filed the first of three motions for summary judgment, seeking to dismiss Union Labor's claims for lack of standing and arguing that Union Labor's subrogation rights were barred by the beneficiary's failure to timely submit her claims under the Olsten Plan. Plaintiff cross-moved and sought a declaration that the Olsten Plan was primary to the Milk Fund Plan. This Court, in its Report and Recommendation dated January 3, 2004, held that Union Labor was a fiduciary with standing under ERISA to bring a declaratory action under 29 U.S.C. § 1132(a)(3); that under the COB provisions of the two plans, the Olsten Plan was primary; and that Union Labor's state law claims were preempted and should be dismissed.

By Memorandum and Order dated March 14, 2005, the Honorable Dora L. Irizarry adopted this Court's January 3, 2004 Report and Recommendation insofar as it recommended denial of defendants' motion for summary judgment based on lack of standing. The court also dismissed plaintiff's state law claims as preempted and granted plaintiff's motion for a

---

[7]Defendants dispute plaintiff's assertion that it was unaware of Brittany's potential coverage by the Olsten Plan. (Defs.' 56.1 Stmnt ¶ 12 (citing Marks Decl. Ex. G)).

declaratory judgment, declaring the Olsten Plan the primary plan under the COB provisions.

In July 2006, the parties filed a second round of cross-motions for summary judgment, seeking a determination as to whether Union Labor's effort to recover the benefits paid was an action for equitable relief under Section 502(a)(3) of ERISA or an action for damages that was precluded by the Supreme Court's decision in Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002). In its motion, Union Labor sought an order enforcing the COB provisions in the two plans and requiring the Olsten Plan to reimburse Union Labor for the amounts paid. This Court issued a second Report and Recommendation, dated August 17, 2007, recommending dismissal of Union Labor's claims for restitution and recoupment on the grounds that they were claims for money damages that were not available under Section 502(a)(3) of ERISA.

By Memorandum and Order dated March 26, 2008, the Honorable Dora L. Irizarry adopted this Court's Report and Recommendation of August 17, 2007 insofar as it recommended that defendants' cross-motion for summary judgment be granted as to plaintiff's claim for restitution and equitable subrogation brought under Section 502(a)(3) of ERISA, holding that "[b]ecause subrogation would only transform Union Labor's claim for restitution into a claim for restitution asserted on behalf of the Rodrigues family, Union Labor's failure to identify a particular fund of the defendants appears to defeat its claim for equitable subrogation under Section 502(a)(3) as well." Union Labor Life Ins. Co. v. Olsten Corp. Health and Welfare Benefit Plan, 617 F. Supp. 2d at 136-37. The court also denied both parties' motions on plaintiff's claim for equitable subrogation under Section 502(a)(1) because further briefing on the merits of the claim was required. Id. at 137. Finally, the court denied plaintiff's claim asking the court to fashion relief to enforce the court's earlier declaratory judgment so as to authorize plaintiff to bring suit for monetary damages under ERISA. Id.

By Notice of Motion dated September 10, 2008, plaintiff now renews its motion for summary judgment on its equitable subrogation claims under Section 502(a)(1). In this motion, plaintiff argues that under the doctrine of equitable subrogation, Union Labor should be permitted to stand in the shoes of Brittany Rodrigues and recover the amounts it paid on her behalf.[8] In addition, Union Labor raises a new argument — namely, that Section 502(a)(2) of ERISA authorizes Union Labor's claim for the recovery of benefits that it paid on behalf of Brittany Rodrigues, under the theory that the Olsten Plan was a temporary fiduciary of the Milk Fund and that the Olsten Plan breached its fiduciary duties to the Milk Fund Plan by failing to honor its obligations under the COB provisions.

By Order dated April 3, 2009, plaintiff's renewed motion for summary judgment was referred to the undersigned to prepare a Report and Recommendation. Oral argument on plaintiff's motion for summary judgment was held on May 15, 2009.

## DISCUSSION

A. Legal Standards - Summary Judgment

It is well-settled that a party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact in dispute and that the moving party is entitled to

---

[8]Defendants opposed plaintiff's motion and filed a cross-motion for summary judgment on October 20, 2008. By Order dated November 7, 2008, the district court struck the defendants' cross-motion because they had failed to obtain permission to file a cross-motion. On March 29, 2009, the court Ordered that upon consideration of plaintiff's summary judgment motion, if the court determines that defendants is entitled to judgment as a matter of law, the court will grant that judgment. In light of this Court's recommendation that plaintiff's motion for summary judgment be denied in its entirety, this Court respectfully recommends that judgment enter in favor of defendants.

judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986);

Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Thompson v. Gjivoje, 896 F.2d 716, 720

(2d Cir. 1990) (quoting Fed. R. Civ. P. 56(c)). Since summary judgment is an extreme remedy,

cutting off the rights of the non-moving party to present a case to the jury, see Egelston v. State

Univ. College at Geneseo, 535 F.2d 752, 754 (2d Cir. 1976); Gibralter v. City of New York, 612

F. Supp. 125, 133-34 (E.D.N.Y. 1985) (stating that summary judgment "is a drastic remedy and

should be applied sparingly"), the court should not grant summary judgment unless it is clear that

all of the elements of Fed. R. Civ. P. 56 have been satisfied. See Auletta v. Tully, 576 F. Supp.

191, 194-95 (N.D.N.Y. 1983), aff'd, 732 F.2d 142 (2d Cir. 1984). In addition, "'the inferences to

be drawn from the underlying facts . . . must be viewed in the light most favorable to the party

opposing the motion.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574,

587-88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Ford

v. Reynolds, 316 F.3d at 354 (stating that "[i]n determining whether a genuine issue of material

fact exists, a court must examine the evidence in the light most favorable to, and draw all

inferences in favor of, the non-movant") (citing Marvel Characters v. Simon, 310 F.3d 280, 285-

86 (2d Cir. 2002)).

Once the moving party discharges its burden of proof under Rule 56(c), the party

opposing summary judgment "has the burden of coming forward with 'specific facts showing

that there is a genuine issue for trial.'" Phillips v. Kidder, Peabody & Co., 782 F. Supp. 854, 858

(S.D.N.Y. 1991) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "provides that a party opposing a

properly supported motion for summary judgment may not rest upon mere allegation or denials

of his pleading." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. Indeed, "the mere existence

of some alleged factual dispute between the parties" alone will not defeat a properly supported

7

motion for summary judgment. Id. at 247-48.

In reversing a grant of summary judgment, the Second Circuit noted that the "[t]rial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material facts to be tried, not to deciding them." Quaratino v. Tiffany & Co., 71 F.3d 58, 65 (2d Cir. 1995) (quoting Gallo v. Prudential Residential Services., Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir. 1994)).

B. Equitable Subrogation under Section 502(a)(1)(B)

Plaintiff has renewed its claim for recovery under a theory of equitable subrogation, pursuant to Section 502(a)(1)(B) of ERISA. 29 U.S.C. § 1132 (a)(l)(B). This issue was addressed preliminarily in this Court's Report and Recommendation dated August 17, 2007. At that time, the Court declined to recommend granting or denying summary judgment on the claim because the parties had not addressed the issue of whether plaintiff is legally entitled to recover under a theory of equitable subrogation.

In essence, plaintiff's theory is that even though only participants or beneficiaries have standing under ERISA to bring an action to recover benefits, see 29 U.S.C. § 1132(a)(l)(B) (conferring the right to plan participants or beneficiaries to bring a civil action "to recover benefits due to him under the terms of his plan, [or] to enforce his rights under the terms of the plan"), under a theory of equitable subrogation, one person may be substituted for another; thus, Union Labor would have the right to "stand in the shoes of another [Maribel Rodrigues] and assert that person's rights against the defendant." JPMorgan Chase Bank v. Cook, 318 F. Supp. 2d 159, 165 (S.D.N.Y.) (internal quotations omitted), reconsideration denied, 322 F. Supp. 2d 353 (S.D.N.Y. 2004). Thus, although fiduciaries such as plaintiff are limited to claims for

8

equitable relief, application of a theory of equitable subrogation would confer upon plaintiff the right that plan participants or beneficiaries have to bring a civil action pursuant to Section 502(a)(1). 29 U.S.C. § 1132 (a)(l).

Plaintiff contends that because the beneficiary, Ms. Rodrigues, was entitled to receive benefits from the Olsten Plan, equitable subrogation would permit plaintiff to assert Ms. Rodrigues' rights against the Olsten Plan, and thereby receive monetary restitution for the amounts that were wrongfully withheld by the Olsten Plan. As the Court noted in its last Report and Recommendation, dated August 17, 2007, it is "at least theoretically possible that plaintiff in this case could seek non-equitable relief under Section 502(a)(1), a subsection of ERISA that is unavailable to fiduciaries, but under which beneficiaries are permitted to bring suit." Union Labor Life Ins. Co. v. Olsten Corp. Health and Welfare Benefit Plan., 617 F. Supp. 2d at 149; see Wilkins v. Mason Tenders Dist. Council Pension Fund, 445 F.3d 572, 578-83 (2d Cir. 2006) (discussing the difference between causes of action under Section 502(a)(1) and Section 502(a)(3)). Plaintiff in this case would need to step into the shoes of its beneficiary in order to assert her right against another ERISA fiduciary. See Union Labor Life Ins. Co. v. Olsten Corp. Health and Welfare Benefit Plan, 617 F. Supp. 2d at 149. The court did not decide the issue at that point in order to give both parties the opportunity to submit briefs on the issue. Id. at 150.

In support of its argument, plaintiff notes that the doctrine of equitable subrogation was designed as a "judicial 'device of equity to compel the ultimate discharge of an obligation by the one who in good conscience ought to pay it.'" (Pl.'s Mem. at 9 (quoting Standard Accident Ins. Co. v. Pellecchia, 104 A.2d 288, 292 (N.J. 1954)); see also Kozlowski v. Briggs Leasing, 96 Misc. 2d 337, 342, 408 N.Y.S.2d 1001, 1004 (1978) (noting that "'[s]ubrogation has the dual objective of (1) preventing the insured from recovering twice for the one harm, as would be the

case if he could recover from both the insurer and from a third person, and (2) reimbursing the surety for the payment which it has made'") (internal citations omitted). However, the fact that equitable subrogation has been favored in the context of cases brought to enforce rights under insurance policies and insurance laws does not resolve the question of whether the doctrine may be applied to create a remedy under ERISA. The Supreme Court has expressed reluctance to expand the rights and remedies available under ERISA, noting that "ERISA is a comprehensive and reticulated statute, the product of a decade of congressional study of the Nation's private employee benefit system. We have therefore been especially reluctant to tamper with the enforcement scheme embodied in the statute by extending remedies not specifically authorized by its text." Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. at 209 (internal quotations and citations omitted); see also Pressroom-Unions Printers League Income Sec. Fund v. Cont'l Ins. Co., 700 F.2d 889, 892 (2d Cir. 1983) (declining to expand ERISA to confer jurisdiction over actions not expressly authorized by the statute).

In urging the Court to extend the doctrine of equitable subrogation to this ERISA claim, plaintiff cites several cases in which courts have conferred standing and allowed derivative suits for the payment of benefits to be brought by assignees of plan participants and beneficiaries. (See Pl.'s Mem. at 11 (citing Fisher v. Building Serv. 32B-J Health Fund, No. 96 CV 5526, 1997 WL 531315 (S.D.N.Y. Aug. 27, 1997)); Misic v. Building Serv. Employees Health & Welfare Trust, 789 F.2d 1374, 1377-78 (9th Cir. 1986); Kennedy v. Conn. General Life Ins. Co., 924 F.2d 698, 700-01 (7th Cir. 1991)). The Fifth Circuit, in Tango Transport v. Healthcare Financial Services LLC, held that a health care provider may bring suit under Section 502(a)(1) where a participant has validly assigned his or her rights to that health care provider. 322 F.3d 888, 893-94 (5th Cir. 2003) (noting its concern that to preclude such assignments could harm participants

by discouraging medical providers from helping beneficiaries who have an immediate need for care but who are unable to pay up front). As plaintiff correctly notes, the general policy concern that persuaded courts to permit the assignments has been that "providers . . .are better situated and financed to pursue an action for benefits owed for their services," Fisher v. Building Serv. 32B-J Health Fund, 1997 WL 531315 at *5, and thus to allow plaintiff standing to pursue the beneficiaries' claims furthers the overall purpose of ERISA which is to "foster the effective and expedient rendering of care." Id. at *4.

However, the Tango Transport case and the other cases cited by plaintiff are distinguishable in that they involved claims brought by health care providers to whom there had been a specific assignment of the right to sue given by the participant or beneficiary. See, e.g., Benitez v. Local 32B-32J Serv. Employees Int'l Union & Bldg. Serv. 32B-J Health Fund, No. 94 CV 0457, 1996 WL 675600 at *1, n.1 (E.D.N.Y. Nov. 14, 1996) (upholding an individual's right to assign benefits to a health care provider); The Renfrew Center v. Blue Cross & Blue Shield of Central N.Y., Inc., No. 94 CV 1527, 1997 WL 204309 at *3 (N.D.N.Y. April 10, 1997) (noting that suits under ERISA by assignees are permissible where there is a valid assignment not prohibited by the plan). Indeed, it is clear that the Fifth Circuit's decision was explicitly limited to assignments by healthcare providers; the court noted that it "need not reach whether *all* assignees or sub-assignees of plan participants have standing to sue." Tango Transp. v. Healthcare Fin. Servs. LLC, 322 F.3d at 894 (emphasis in original).

In this case, however, plaintiff has not pointed to a provision in either of the plans that would entitle it to subrogation, nor is there any evidence that Maribel Rodrigues ever executed an assignment of her rights over to Union Labor. Thus, the cases cited by plaintiff are inapposite to the instant question. Moreover, plaintiff still has not cited any case authority in the context of an

ERISA action that has permitted a claim of equitable subrogation to proceed in the absence of a

specific assignment.[9]

As this Court previously noted, the Second Circuit has not addressed this question

directly. See Clinical Partners v. Guardian Life Ins. Co. of America, No. 94 CV 1199, 1996 WL

294361, at *3-4 (E.D.N.Y. May 30, 1996) (noting that the Second Circuit had not ruled on

whether ERISA permits assignments by beneficiaries).[10] On the other hand, the Third Circuit has

held that a fiduciary may not sue under Section 502(a)(1). See Northeast Dep't ILGWU Health

& Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund, 764 F.2d 147, 154 n.6 (3d

Cir. 1985) (holding that "Congress simply made no provision in § 1132(a)(1)(B) for persons

other than participants and beneficiaries to sue, including persons purporting to sue on their

behalf . . . [and] the intentions of the parties and the district court regarding federal jurisdiction

are irrelevant to the determination whether such jurisdiction exists"); but see Pascack Valley

_____

[9]The Court further notes, as discussed in the August 17, 2007 Report, that defendants have raised numerous defenses based on the evidence, which may not be applicable to plaintiff's non-derivative claims, but which would be available to defendants if the plaintiff was allowed to proceed "stand[ing] in the shoes" of Brittany Rodrigues via equitable subrogation. Given the disputed issues of fact relating to coverage, alleged misrepresentations as to cancellation, and non-compliance with the procedural requirements of the Olsten Plan, the Court would recommend that summary judgment be denied even if plaintiff's equitable subrogation claim were permitted to proceed. See Union Labor Life Ins. Co. v. Olsten Corp. Health and Welfare Benefit Plan, 617 F. Supp. 2d at 147.

[10]The Court of Appeals in Connecticut v. Physicians Health Servs. of Conn., 287 F.3d 110 (2d Cir. 2002), declined to grant standing to the State of Connecticut based on an assignment of rights by plan participants, explaining that because states are granted standing in some sections of ERISA, they are not among the enumerated parties authorized to bring suits for equitable relief under Section 502(a)(3) of ERISA, and therefore "'the inference that Congress intentionally omitted states from section [1132(a)(3)] finds strong support in the fact that states are expressly empowered . . .to bring only a very limited class of cases." Id. at 121 (internal citation omitted). It seems likely that the court may reach the same conclusion with respect to fiduciaries which are explicitly given standing to bring actions for equitable relief but not for monetary damages.

Hosp. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 400-401 n.7 (3d Cir. 2004) (noting that although the plaintiff hospital was neither a beneficiary or participant, it was unclear whether it would have standing to sue under Section 502(a) when the participant or beneficiary has assigned such claim), cert. denied, 546 U.S. 813 (2005).

Courts in this district have, like the Third Circuit, been wary of extending the right of equitable subrogation to this type of circumstance. See Liberty Life Assurance Co. of Boston v. Toys "R" US, Inc., 901 F. Supp. 556, 562 (E.D.N.Y. 1995) (holding that even if a beneficiary had properly assigned his rights to an insurer in a subrogation clause, "it is not clear that such a designation would pass jurisdictional muster under the Second Circuit's literal construction of § 502(a) of ERISA"); see also Clinical Partners v. Guardian Life Insurance Co. of America, No. 94 CV 1199, 1996 WL 294361, at *4 (E.D.N.Y. May 30, 1996) (finding that "permitting assignments to third parties would undermine ERISA's purpose").

The only case cited by plaintiff that arguably confers standing to a subrogee under Section 502(a)(1)(B) is the decision of the district court in Allstate Ins. Co. v. Operating Engineers Local 324 Health Care Plan, 742 F. Supp. 952 (E.D. Mich. 1990). As defendants point out, the court in that case was asked to consider a motion to remand to state court and ultimately the subrogee's claim was dismissed. More importantly, there was no discussion as to whether the issue of standing was based upon Section 502(a)(1)(B) or 502(a)(3). To that extent, the decision was issued prior to the Supreme Court's decision in the Great-West case (decided in 2002) and if brought under Section 502(a)(3) may have been decided differently if brought today. In any event, the decision is not binding on this Court and the Court is persuaded that to adopt plaintiff's argument and allow claims of equitable subrogation in this situation would be contrary to the carefully crafted scheme of remedies enacted by Congress in determining rights under

13

ERISA. See Connecticut v. Physicians Health Servs., 287 F.3d at 121.

Accordingly, it is respectfully recommended that plaintiff's claim for equitable subrogation be dismissed.

## C. Relief under Section 502(a)(2)

In addition to the claim of equitable subrogation, plaintiff also argues that defendants breached their fiduciary duty under Section 502(a)(2) of ERISA. 29 U.S.C. § 1109(a). As an initial matter, plaintiff correctly notes that the court has previously found that under the COB provisions of both plans, the Olsten Plan was the primary plan responsible for paying health benefits to the Rodrigues family. According to plaintiff, the only dispute[11] is whether plaintiff has a legal or equitable remedy that will allow it to recover the amounts paid by Union Labor in error. In this third motion, plaintiff contends that under Section 502(a)(2) of ERISA, the Olsten Plan was a temporary fiduciary of the Milk Fund Plan and that the Olsten Plan breached its fiduciary duties to Union Labor by failing to reimburse plaintiff for the benefits that Union Labor paid on behalf of Brittany Rodrigues.

Plaintiff argues that Section 502(a)(2), considered in conjunction with Section 409(a),

---

[11] The Court recognizes that this finding is contingent upon there being a valid agreement between the Rodrigues family and the Olsten Plan, and that defendants have raised several defenses calling into question whether the Rodrigues family would have been able to seek benefits from the Olsten Plan in the first place. Specifically, the defendants suggest that: (1) Brittany Rodrigues was not properly covered by the Olsten Plan because when her mother first commenced employment with Olsten, she declined coverage under the Olsten Plan; (2) Maribel Rodrigues may have made certain misrepresentations regarding the cancellation of her prior insurance coverage and the extent of her prenatal care; and (3) the claims were not properly submitted to W.J. Jones under the terms of the Olsten Plan. As noted supra note 9 at p. 11, even if the plaintiff were permitted to proceed under either of the theories addressed here, summary judgment in plaintiff's favor would not be warranted because there are disputed issues of fact relating to these defenses.

authorizes the recovery of monetary damages when a fiduciary breaches a duty that impairs the plan's assets. Plaintiff further argues that, for purposes of ERISA, the Olsten Plan is a "fiduciary" and may be held liable for breaching its plan obligations under Section 409. See ERISA § 409(a), 29 U.S.C. § 1109. Specifically, Section 409(a) provides as follows:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach. . . .

29 U.S.C. § 1109(a).

Plaintiff further notes that the Court's January 3, 2004 Report and Recommendation held that Union Labor is a "fiduciary" under Section 502(a) and thus, plaintiff argues that under ERISA, a fiduciary such as itself has standing to bring a civil action for appropriate relief to redress the Olsten Plan's violations of its duties under Section 409. (Pl.'s Mem.[12] at 6 (citing Rept. 1 at 14-15)). Plaintiff argues that because the Olsten Plan failed to comply with its COB provision, it became a constructive trustee and fiduciary of the Milk Fund, in that it wrongfully "'obtained or [held] legal right to property which it should not, in equity and good conscience, hold and enjoy.'" (Pl.'s Mem. at 6 (quoting Black's Law Dictionary 166 (abridged 5th ed. 1983)). The "property" which plaintiff alleges was wrongfully held by the Olsten Plan was the monies paid by Union Labor to Brittany Rodrigues, which should have been paid by the Olsten Plan under the plans' COB provisions. Plaintiff asserts that by shirking its responsibilities to pay benefits, and retaining the benefits that should have been paid, the Olsten Plan "exercised control

---

[12] Citations to "Pl.'s Mem." refers to Union Labor Life Insurance Company's Memorandum of Law in Support of its Renewed Motion for Summary Judgment, dated September 10, 2008.

over the disposition of the Milk Fund Plan's assets and became a constructive trustee of those assets, thus rendering itself a temporary fiduciary of the Milk Fund Plan." (Pl.'s Mem. at 7-8).

Plaintiff further contends that the Olsten Plan, as a plan fiduciary, failed to comply with Section 404 of ERISA, which requires that fiduciaries discharge their duties "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104. A plan fiduciary is required to act responsibly with respect to the "'proper management, administration, and investment of fund assets' with an eye toward ensuring that 'the benefits authorized by the plan' are ultimately paid to participants and beneficiaries." Larue v. DeWolff, Boberg & Assocs., 128 S. Ct. 1020, 1024 (2008) (quoting Massachusetts Mut. Life Ins. Co. v. Russell 473 U.S. 134, 142 (1985)). Section 409 of ERISA imposes liability for breaches of fiduciary duty. 29 U.S.C. § 1109.

Defendants note several problems with plaintiff's argument and assert that the relief sought here is not appropriate. First, defendants note that this breach of fiduciary duty claim was never pleaded in the plaintiff's complaints and argue that Union Labor should not, at this late date, be permitted to amend the complaint to add such a claim.

On the merits of the claim, defendants contend that an action under 29 U.S.C. § 1109 may be brought against "[a]ny person who is a fiduciary," but that the Olsten Plan is not a "person" as defined by 29 U.S.C. § 1002(9). This provision defines "person" as an "individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association or employee organization." 29 U.S.C. § 1002(9). Defendants argue that the Olsten Plan "is none of those," and therefore it is not a proper defendant. (Defs.' Mem.[13]

---

[13] Citations to "Defs.' Mem." refer to Defendants' Memorandum of Law in Opposition to Plaintiff's Renewed Motion for Summary Judgment and In Support of Defendants' Cross-Motion for Entry of Final Judgment, dated October 20, 2008.

at 9 (citing <u>Swanson v. U.A. Local 13 Pension Plan</u>, 779 F. Supp. 690 (W.D.N.Y. 1991), <u>aff'd</u>, 953 F.2d 636 (2d Cir. 1991) (holding that a pension plan is not a proper defendant in a suit brought pursuant to Section 1140 because pension plans are not included in the ERISA definition of "person"); <u>Adams v. Kopper Co., Inc.</u>, 684 F. Supp. 399, 400-01 (W.D. Pa. 1988))).

Contrary to defendants' definitional argument, plaintiff contends that ERISA plans have, in fact, been found to be fiduciaries. (Pl.'s Reply at 4 (citing <u>U.S. Steel Min. Co., Inc. v. District 17, United Mine Workers of America</u>, 897 F.2d 149 (4th Cir. 1990); <u>Saramar Alum. Co. v. Pension Plan for Employees of Alum. Ind. & Allied Industries of Youngstown, Ohio Metro. Area</u>, 782 F.2d 577 (6th Cir. 1986))).

A more critical flaw in plaintiff's argument is that even if the Olsten Plan falls within the definition of a "fiduciary," it is still not a fiduciary with respect to the Milk Fund administered by Union Labor. As defendants correctly note, a person becomes a fiduciary under ERISA "[o]nly when fulfilling certain defined functions." <u>Siskind v. Sperry Retirement Program</u>, 47 F.3d 498, 505 (2d Cir. 1995); <u>see also</u> <u>Johnson v. Georgia-Pacific Corp.</u>, 19 F.3d 1184, 1188 (7th Cir. 1994). The definition of fiduciary outlined in ERISA provides:

> A person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Here, the Olsten Plan had no obligations to and did not perform any defined function that would render it a fiduciary with respect to the Milk Fund Plan.

Plaintiff argues that under 29 U.S.C. § 1002(21)(A)(i), an ERISA fiduciary is anyone who "'with respect to a plan. . . exercises any authority or control respecting . . . [the] disposition of its assets.'" (Pl.'s Reply at 4 (quoting 29 U.S.C. § 1002(21)(A)(i))). Citing cases in which employers who have failed to pay plan contributions have been held to be fiduciaries, see, e.g., LoPresti v. Terwilliger, 126 F.3d 34, 40 (2d Cir. 1997); Iron Workers Local No. 25 Pension Plan v. McGuire Steel Erection, Inc., 352 F. Supp. 2d 794, 804-05 (E.D. Mich. 2004); see also United States v. Panepinto, 818 F. Supp. 48, 51-52 (E.D.N.Y. 1993), plaintiff argues that control over the plan assets need not be authorized and control may only be momentary. (Pl.'s Reply at 4). According to plaintiff, that alone may be sufficient to trigger fiduciary status. Plaintiff argues that when the Olsten Plan misrepresented to Ms. Rodrigues that the Milk Fund Plan was the primary insurer, it became a fiduciary of the Milk Fund Plan. (Id. at 5).

In each of the cases cited by plaintiff, the employers had a pre-existing relationship to the funds and were contractually bound to pay contributions to the funds as part of a collective bargaining agreement. In this case, the Olsten Plan had no contractual obligation directly with the Milk Fund Plan and therefore no fiduciary duty was owed. Although Union Labor asserts that "the Olsten Plan exercised control over the disposition of the Milk Fund Plan's assets" (Pl.'s Mem. at 7), plaintiff has failed to provide any support or explanation as to the basis for this claim. To the extent that monies were erroneously paid to the Rodrigues family, the decision to pay was made by Union Labor as administrator of the Milk Fund Plan. The Olsten Plan did not review the Rodrigues family's application to the Milk Fund Plan for benefits nor did it direct the payment of Milk Fund Plan monies. The fact that the Olsten Plan may have misapplied the terms of its own plan to its own beneficiaries by denying payment to the Rodrigues family while the Milk Fund Plan, in its own discretion, paid out money based on certain erroneous assumptions,

18

did not transform the Olsten Plan into a fiduciary of the Milk Fund Plan. Plaintiff has cited no cases to support this theory in the context of two ERISA plans, and, in the absence of any basis on which to find that the Olsten Plan became a fiduciary of the Milk Fund Plan, Union Labor's claimed breach of fiduciary duty fails.

## D. Preemption of State Law Claims

As a final matter, in its Reply, plaintiff raises a new argument not addressed in its initial moving papers. In essence, plaintiff seeks reconsideration of the court's earlier ruling that preemption precludes consideration of plaintiff's state law claims.

### 1) Standards for Reconsideration

In moving for reconsideration of the court's earlier decision regarding preemption, plaintiff fails to cite any legal authority that would allow the court at this time, more than four years later, to revisit its earlier ruling regarding preemption. Local Civil Rule 6.3, formerly Local Civil Rule 3(j), provides the standards by which a party may move for re-argument and reconsideration of a court's prior order. See Belmont v. Associates Nat'l Bank, 219 F. Supp. 2d 340, 343 (E.D.N.Y. 2002); see also Winkler v. Metro. Life Ins. Co., 340 F. Supp. 2d 411, 412-13 (S.D.N.Y. 2004); Parajecki v. Int'l Bus. Machs. Corp., 165 F.R.D. 20, 22 (E.D.N.Y. 1996).

Generally, under Rule 6.3, courts have required the moving party to "demonstrate controlling law or factual matters put before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision." Ferrand v. Credit Lyonnais, 292 F. Supp. 2d 518, 520 (S.D.N.Y. 2003) (internal citations omitted); see also Byrne v. Liquid Asphalt Sys., Inc., 250 F. Supp. 2d 84, 88 (E.D.N.Y. 2003). Under the Rule, a moving party may not "advance new facts, issues or arguments not

previously presented to the Court." Winkler v. Metro. Life Ins. Co., 340 F. Supp. 2d at 413

(quoting Morse/Diesel, Inc. v. Fidelity & Deposit Co. of Maryland, 768 F. Supp. 115, 116

(S.D.N.Y. 1991)); see also Ferrand v. Credit Lyonnais, 292 F. Supp. 2d at 520 (holding that Rule

6.3 is "not intended as a vehicle for a party dissatisfied with the court's ruling to advance new

theories that the movant failed to advance in connection with the underlying motion").

Reconsideration of a prior order may also be appropriate "if the court's original order was

ambiguous." Lotze v. Hoke, 654 F. Supp. 605, 607 (E.D.N.Y. 1987) (citing Kelly v. Pension

Benefit Guar. Corp., No. 79 CV 0547, 1980 U.S. Dist. LEXIS 12458, at *1 (S.D.N.Y. July 17,

1980)).

The rule is to be "narrowly construed and strictly applied so as to avoid repetitive

arguments on issues that have already been considered fully by the court," Minkina v. Ashcroft,

No. 01 CV 511, 2004 WL 1447947, at *1 (E.D.N.Y. June 25, 2004) (quoting Veloz v. State of

New York, No. 98 CV 567, 1999 WL 642883, at *2 (S.D.N.Y. Aug. 24, 1999)), and such a

motion must not be used as a substitute for an appeal. See Ferrand v. Credit Lyonnais, 292 F.

Supp. 2d at 520. Instead, the rule is an "extraordinary remedy to be employed sparingly in the

interests of finality and conservation of scarce judicial resources." Winkler v. Metro. Life Ins.

Co., 340 F. Supp. 2d at 412 (quoting In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d

613, 614 (S.D.N.Y. 2000)). Rule 6.3 was designed to provide a mechanism "to 'correct a clear

error or prevent manifest injustice.'" Jordan v. Metro. Life Ins. Co., No. 03 CV 4110, 2004 WL

1752822, at *2 (S.D.N.Y. Aug. 4, 2004) (quoting Doe v. New York City Dep't of Social Servs.,

709 F.2d 782, 789 (2d Cir. 1983)); see also Belmont v. Associates Nat'l Bank, 219 F. Supp. 2d at

343.

The Rule also contains a strict time requirement for filing motions for reconsideration.

According to the Rule, a notice of motion for reargument or reconsideration "shall be served within ten (10) days after the *entry* of the court's determination of the original motion." Local Civil Rule 6.3.

In this case, plaintiff argues that if the Olsten Plan is not considered a fiduciary, then the court must revisit its decision finding that preemption bars consideration of plaintiff's state law claims of equitable subrogation and unjust enrichment. Plaintiff asserts that if the Olsten Plan is not a fiduciary, and has "'no real power to control what the plan [does],'" it therefore plays only a peripheral role under ERISA. (Pl.'s Reply at 6 (quoting Mertens v. Hewitt Assocs., 508 U.S. 248, 262 (1993))). Thus, plaintiff contends that its suit under state law theories should be allowed to proceed, just as courts permit "'garden-variety state-law malpractice or negligence claims against non-fiduciary plan advisors, such as accountants, attorneys, and consultants.'" (Pl.'s Reply at 6 (quoting Gerosa v. Savasta & Co., 329 F.3d 317, 324 (2d Cir. 2003), cert. denied, 540 U.S. 967 and 540 U.S. 1074 (2003))).

In addition to the obvious problem that plaintiff's motion is clearly untimely under the Local Rule, the defendants have not been given an opportunity to respond because the issue was never raised until plaintiff filed its Reply Memorandum. Moreover, even if the court were to consider the arguments raised, plaintiff has not suggested that the court overlooked "controlling decisions or factual matters put before [it]." Ferrand v. Credit Lyonnais, 292 F. Supp. 2d at 520. Nor has plaintiff suggested that the court's prior Order was "ambiguous." Lotze v. Hoke, 654 F. Supp. at 607. Under these standards, plaintiff's motion to reconsider the court's earlier ruling may be denied outright.

However, this Court, in its discretion, may also consider plaintiff's motion for reconsideration under Rule 60(b) of the Federal Rules of Civil Procedure. See Rodriguez v.

Barnhart, No. 03 CV 7272, 2004 WL 2428715, at *1-2 (S.D.N.Y. Oct. 29, 2004); see also Neal

v. Peerless Electronic, No. 01 CV 4852, 2004 WL 1810329, at *1-2 (E.D.N.Y. Aug. 12, 2004).

Rule 60(b) provides, in relevant part, that:

> On motion and just terms, the court may relieve a party . . . from a
> final judgment, order, or proceeding for the following reasons: (1)
> mistake, inadvertence, surprise, or excusable neglect; (2) newly
> discovered evidence that, with due diligence, could not have been
> discovered in time to move for a new trial under Rule 59(b); (3)
> fraud . . ., misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void; (5) the judgment has been satisfied,
> released, or discharged . . .; or (6) any other reason that justifies
> relief.

Fed. R. Civ. P. 60(b). Generally, in order to prevail on a Rule 60(b) motion, the movant must

"demonstrate that one of the criteria outlined in the rule applies." Williams v. New York City

Dept. of Corrs., 219 F.R.D. 78, 83 (S.D.N.Y. 2003). Furthermore, the movant seeking relief

under Rule 60(b) must show: (1) that there is "'highly convincing' evidence supporting the

motion;" (2) that the moving party has "good cause for failing to act sooner;" and (3) "that

granting the motion will not impose an undue hardship on the other party." Broadway v. City of

New York, No. 96 CV 2798, 2003 WL 21209635, at *3 (S.D.N.Y. May 21, 2003) (citing

Kotlicky v. United States Fidelity Guar. Co., 817 F.2d 6, 9 (2d Cir. 1987)); see also Torf v.

Metromedia Paging Servs., Inc., No. 93 CV 4031, 1996 WL 118559, at *3 (E.D.N.Y. March 5,

1996).

In this instance, plaintiff has not moved for reconsideration based on any specific section

of Rule 60(b) and there has been no showing that review of the motion is appropriate under the

standards set out in Rule 60(b). "In deciding whether to grant a Fed. R. Civ. P. 60(b) motion, the

Court must strike 'a balance between serving the ends of justice and preserving the finality of

judgments.'" Berry v. Kerik, 237 F. Supp. 2d 450, 451 (S.D.N.Y. 2002) (quoting from Nemaizer

v. Baker, 793 F.2d 58, 61 (2d Cir. 1986)). While the rule should be "broadly construed to do substantial justice," relief under Rule 60(b) is appropriate "only upon a showing of exceptional circumstances." Nemaizer v. Baker, 793 F.2d at 61 (internal citations and quotations omitted). The standard for granting a motion for reconsideration is "strict" and may only be granted on very limited grounds consisting of "'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" New York v. Solvent Chem. Co., 235 F. Supp. 2d 238, 239-40 (W.D.N.Y. 2002) (quoting Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir.), cert. denied, 506 U.S. 820 (1992)).

Although plaintiff does not assert that there has been an intervening change of controlling law and has generally failed to show that reconsideration of its motion for summary judgment is appropriate under the strict standards of Rule 60(b), the Court, in its discretion, has preliminarily considered plaintiff's arguments under that Rule, as well as under Local Rule 6.3. Despite plaintiff's citation to one new Ninth Circuit case decided since the original motion was decided, the Court concludes that there has not been a significant change in the controlling law to warrant reconsideration of the court's preemption decision and respectfully recommends that plaintiff's motion be denied for the reasons stated below.

2) Analysis

As noted in this Court's earlier Report and Recommendation, a two-step analysis is used to determine whether a state law claim is preempted. (Rept. 1 at 17-18). The court must determine (1) whether the claim "relates to" an employee benefit plan as defined in 29 U.S.C. § 1144(a) and, if so, (2) whether there is an exception that precludes preemption. See Keiser v. CDC Inv. Mgmt. Corp., 160 F. Supp. 2d 512, 517 (S.D.N.Y. 2001) (citing Shaw v. Delta Air

23

Lines, Inc., 463 U.S. 85, 96 (1983)).[14] Under this analysis, courts have held that breach of

contract claims based on a failure to pay employee benefits, such as the claims at issue here, are

preempted.  See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 55-56 (1987).

In its March 2005 decision, the district court dismissed plaintiff's state law claims in this

case as preempted. (Mem. 1 at 3).  The cases now cited by plaintiff do not provide a basis for

revisiting that preemption determination.  As noted supra, plaintiff argues that if the court

concludes that the Olsten Plan was not a fiduciary of the Milk Fund Plan and cannot be held for

breaching its fiduciary duties, then this case should be treated in a similar fashion to cases

brought against other non-fiduciaries such as plan advisors, accountants, attorneys and

consultants.

Among the cases relied upon to support this theory, plaintiff cites a decision from the

Second Circuit in which the trustees of a pension fund were permitted to pursue state law claims

of promissory estoppel, breach of contract, and professional malpractice against the plan's

actuary after the actuary allegedly produced several negligent actuarial statements leaving the

fund "dangerously underfunded."  See, e.g., Gerosa v. Savasta & Co., 329 F.3d at 319-20.  In

analyzing the issue of preemption, the court in Gerosa began with the assumption that Congress

did not intend to supplant state law in "fields of traditional state regulation," such as the

standards of professional liability applied to accountants, actuaries and attorneys.  Id. at 323-24.

_____

[14] A recent case from the Eastern District of New York held that state laws are preempted
by ERISA when "(a) a state law clearly refers to ERISA plans in the sense that the measure acts
immediately and exclusively upon ERISA plans or where the existence of ERISA plans is
essential to the law's operation;" or (b) "a state law has a clear connection with a plan in the sense
that it mandate[s] employee benefit structures or their administration or provid[es] alternative
enforcement mechanisms." Knickerbocker Dialysis, Inc. v. Trueblue, Inc., 582 F. Supp. 2d 364,
366 (E.D.N.Y. 2008) (internal citations omitted).

At the same time, however, the court also noted that state laws that "would tend to control or supersede central ERISA functions – such as state laws affecting the determination of eligibility for benefits, amounts of benefits, or means of securing unpaid benefits – have typically been found to be preempted." Id. at 324. Since the plaintiff's claims in Gerosa concerned the relationship between an ERISA plan and its actuary, in which there were claims raised of professional malpractice, "a traditional area[] of state control," the court found that Congress did not intend to preempt the claims. Id. at 328. Here, by contrast, the dispute is between two competing ERISA plans, where resolution of plaintiff's state equitable claims will require construction of the ERISA plans and a determination of benefits due under the plans. Thus, Gerosa is inapposite to plaintiff's claim here.[15]

Plaintiff also cites a Ninth Circuit decision for the proposition that "ERISA does not preempt the claims of parties who do not have the right to sue under ERISA because they are not participants in nor beneficiaries of an ERISA plan." (Pl.'s Reply at 6 (citing Miller v. Rite Aid Corp. 504 F.3d 1102, 1106 (9th Cir. 2007)). This case, like Gerosa, is distinguishable and not a controlling decision that this court "overlooked." Specifically, in Miller, the estate and alleged beneficiaries of an employee were allowed to proceed against the decedent's employer and pursue state law claims of breach of an employment contract and negligence based on the employer's failure to provide the employee with a life insurance plan. Id. at 1104. Although the defendants argued that the claims should be preempted because the plan at issue was an ERISA plan, the court held that because the employee was not enrolled in the ERISA plan at the time of

---

[15]The Court notes that Gerosa was decided in May 2003, long before the district court here dismissed plaintiff's state claims as preempted. There has been no argument raised that plaintiff put the court on notice of this argument and that the court "overlooked" Gerosa.

her death, the estate was not a "participant" and the state law claims did not depend on the terms of a specific ERISA plan. Id. at 1107.

Finally, plaintiff cites the Supreme Court's decision in New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co., arguing that "'[p]re-emption does not occur. . . if the state law has only a tenuous, remote or peripheral connection with covered plans, as is the case with many laws of general applicability.'" (Pl.'s Reply at 6 (quoting New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 661 (1995) (internal quotations omitted)). Again, this case is not on point because it did not involve a claim for payment for benefits, but instead involved a state law imposing tax surcharges on hospital rates for certain patients. New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. at 645. In finding that the state law was not preempted, the court explained that the statute at issue did not specifically "relate to" or even refer to ERISA plans, but rather at best had an indirect economic impact on the insurers who provide such plans and not on the plans themselves. Cf., NYSA-ILA Med. & Clinical Servs. Fund v. Axelrod, 74 F.3d 28, (2d Cir. 1996) (distinguishing Travelers and finding that state tax on gross receipts of medical centers operated by an ERISA fund was preempted as operating as a direct tax on payments and contributions intended for plan participants).[16]

Thus, the cases cited by plaintiff as permitting state law claims to proceed are easily

_____

[16] The plaintiff has also cited to a Maryland District Court case from 2001 which assumed that state law claims could be brought by an ERISA plan against an ERISA participant's attorney in order to recover funds the participant had won in the settlement of a tort suit for medical injuries. Maryland Elec. Ind. Health Fund v. Levitt, 155 F. Supp. 2d 482, 484-85 (D. Md. 2001). In that case, the court did not have reason to decide the issue of preemption because the plaintiff had not actually pleaded any state law claims. Id. In any event, a state law claim by the ERISA plan against the attorney would not have required a determination of benefits owed under the ERISA plan and therefore this case does not assist plaintiff's argument here.

distinguished from the instant action and the Court finds no basis on which to revisit the earlier preemption determination. In the absence of a showing that the court overlooked a controlling decision that would call into question the preemption analysis, the Court respectfully recommends that to the extent that plaintiff seeks reconsideration of the court's earlier decision with respect to plaintiff's state law claims, that the plaintiff's motion be denied.[17]

## CONCLUSION

For the reasons set forth above, the Court respectfully recommends that plaintiff's motion for summary judgment on its claims for equitable subrogation and for breach of fiduciary duty be denied and that plaintiff's motion to reconsider the court's earlier preemption ruling also be denied for the reasons stated. The Court further recommends that judgment enter in defendants' favor.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Small v. Secretary of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

---

[17]Should the district court disagree and wish to consider plaintiff's arguments on preemption, this Court respectfully recommends that defendants be given time to address the plaintiff's newly raised arguments.

The Clerk is directed to send copies of this Report and Recommendation to the parties

electronically through the Electronic Case Filing (ECF) system.

**SO ORDERED.**

Dated: Brooklyn, New York
       September 22, 2009

Cheryl L. Pollak
United States Magistrate Judge